UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALAN STRATTAN,

    Petitioner,

v.                                                        Case No. 3:16-cv-1174-J-32JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

    Respondents.

## ORDER

**I. Status**

Petitioner Alan Strattan, an inmate of the Florida penal system, initiated this action with the assistance of counsel by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) on September 15, 2016. Strattan is proceeding on an Amended Petition filed by counsel on September 22, 2016. See Doc. 4 (Petition). Strattan challenges a 2012 state court (Columbia County, Florida) judgment of conviction for which he is serving a life term of incarceration. Respondents filed a Response to the Petition. See Doc. 13 (Resp.) with exhibits (Resp. Ex.). Strattan, through counsel, filed a Reply. See Doc. 14 (Reply). This case is ripe for review.

**II. Procedural History**

On March 28, 2012, Strattan entered a negotiated plea of guilty to three counts of "first degree murder while armed" (counts one, three, and four) and "killing of

unborn quick child" (count two). Resp. Ex. M. That same day, the trial court sentenced Strattan in conformance with his negotiated disposition to a term of life on each count, with all counts to run consecutive. Id. Strattan did not seek a direct appeal of his judgment and sentences.

Strattan filed a Florida Rule of Criminal Procedure 3.850 motion for postconviction relief on March 21, 2013. Resp. Ex. B at 1-38. On December 15, 2015, the trial court entered an order summarily denying Strattan's Rule 3.850 motion. Id. at 107-25. The First District Court of Appeal per curiam affirmed the trial court's order of denial without a written opinion on June 27, 2016. Resp. Ex. E. The mandate was issued on August 17, 2016. Resp. Ex. H. This action followed.

## III. Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to

2

qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that

3

> even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

**B. Ineffective Assistance of Counsel**

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth

4

Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

5

## IV. Analysis

Strattan raises one ground for relief. He claims that trial counsel was ineffective for failing to advise him of a viable "state of mind defense" prior to his pleas of guilty. Doc. 4 at 5. Strattan contends that he did not commit the murders with "aforethought," but instead committed the murders because he believed the victims were robbing him and that shooting them was necessary to defend himself and his property. Id. at 19. According to Strattan, had he known his conduct only amounted to a lesser included offense of first degree murder, he would not have entered pleas of guilty and would have insisted on going to trial. Id.

Strattan raised this claim in his Rule 3.850 motion. Resp. Ex. B at 1-10. The trial court summarily denied the claim, finding in pertinent part:

> The Defendant argues that, had he gone to trial, first degree murder would have been difficult for the State to prove. The Defendant goes on to raise a highly speculative argument that, in the scenario in which a jury may have found the Defendant guilty of a lesser included offense, the Defendant would have then had the opportunity to present mitigating factors whereby the Defendant could possibly have received some punishment less than life in prison. The Defendant also argues that his counsel should have informed Defendant about the rare, and in this case, especially unlikely event of a jury pardon.
>
> As explained, the Defendant in this case entered a plea agreement with the State whereby the Defendant would plead guilty to the crimes as charged, and in exchange, the Defendant would avoid the death penalty for murdering three individuals and an unborn child. As a part of entering a plea agreement, in order for that plea to be voluntary, an attorney must adequately advise a defendant of certain things. However, that advice does not include an explanation of lesser included offenses, mitigating factors, or the chance of receiving a jury pardon. In Bolware v. State,

6

the Florida Supreme Court held that "[a] voluntary plea requires that the defendant be told only of consequences that affect the range of criminal punishment and those other subjects specifically listed in rule 3.172(c)." 995 So. 2d 268, 275 (Fla. 2008). Rule 3.172(c) does not require that an attorney explain lesser included offenses, or the potential opportunity to argue mitigating factors on the off chance that a jury finds the Defendant guilty of a lesser included offense. The rule also gives no instruction to advise a defendant of jury pardon. Finally, as to the consequences of the range of criminal punishment, this applies to the charges against the Defendant, and not some speculative chance that a finding could be made of a different crime from that which is charged and tried. As such, the Defendant's counsel in this case had no duty to advise the Defendant of these things.

The Defendant concludes Ground One by arguing that his counsel in some way did not adequately represent the Defendant and did not spend adequate time in preparing for the Defendant's case. The record reflects that the Defendant's counsel spent a great deal of time on the Defendant's case by the high number of motions filed by counsel, as well as the many subpoenas executed and depositions taken. The Defendant also mentions later in the instant motion that his counsel sought to have the Defendant mentally evaluated. And finally, the Defendant testified, while under oath at the plea hearing as follows:

| THE COURT: | Did you read each of the two documents styled offer of plea carefully? |
| --- | --- |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Did you understand everything that was contained in each of those two documents? |
| THE DEFENDANT: | I did. |
| THE COURT: | Did you go over them carefully with your attorney? |

7

| | |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Have you had sufficient time to discuss the terms and conditions of the agreement that was contained in the offer of plea with you lawyer? |
| THE DEFENDANT: | Yes, You Honor. |
| THE COURT: | Was your lawyer able to answer any questions that you might have concerning what's contained in the plea agreement in each and both cases?[1] |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you remain well-satisfied with the services your lawyer has provided to you in both of these matters? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | That includes the investigation of the case and completing any discovery that might have taken place as well. Are you satisfied? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Do you feel as though he has done a competent job representing you? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you have any issues at all with the services that Mr. Payne had provided to you? |

---

[1] Strattan also pled guilty to violation of probation charged in a separate case. Resp. Ex. B at 65.

8

> THE DEFENDANT: No, Your Honor.
>
> As such, the Defendant's sworn testimony refutes the Defendant's current claim that his counsel performed inadequately or that the Defendant was displeased with the time and effort that his counsel put into the case.

Resp. Ex. B at 108-10 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Exs. E; H.

To the extent that the First DCA affirmed the circuit court's denial on the merits,[2] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Strattan is not entitled to relief on the basis of this claim.

Nevertheless, assuming the state court's adjudication is not entitled to deference, Strattan's claim is still without merit. Indeed, even if trial counsel was deficient for failing to advise Strattan of a viable defense regarding a lack of premeditation, Strattan cannot demonstrate "a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Specifically, "where the alleged error

---

[2] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

9

of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id. at 59-60.

As Strattan details in his Petition, see Doc. 4 at 17-19, during the plea colloquy, the state presented a factual basis for Strattan's pleas of guilty, see Resp. Ex. B at 74-76. The state attorney provided in pertinent part:

> The evening of February 2, 2011, Mr. Strattan was at the residence of his parents with Monica B. Hudson. Also present were Nichole Marie Cervantez and Michael Kevin Tucker and a small child of Ms. Cervantez.
>
> While there, the parties – they were essentially planning their evening and Mr. Tucker – excuse me, Mr. Strattan left to go grab some alcohol. And when he came back, after returning to the residence, he and Ms. Cervantez got into a verbal altercation, which led at some point to Mr. Strattan producing a .40 caliber Springfield Armory handgun and putting five rounds into Ms. Cervantez. He then turns to Ms. Hudson, he puts five rounds into Ms. Hudson. Both of those ladies go down.
>
> Mr. Tucker, who was downstairs with the small child, heard gunfire and came running up the steps. Mr. Strattan then turns and puts three rounds into Mr. Tucker.
>
> He walks over – his gun is now empty, he has to obtain anther magazine. He reloads the weapon, puts a fourth round, a coup de grace, into Mr. Tucker.
>
> He then walks over to Monica Hudson, sees her looking up at the floor from him and he shoots her one more time in the head to go ahead and put her out of her misery.
>
> He then goes and turns to leave the residence and then remembers the small child downstairs. He goes back in the residence, he retrieves the child, takes her through the room where these people are, but he allegedly covered her eyes so she could not see what was there, and he leaves the

> residence, puts the child in the car and he starts driving away.
>
> Then he's not sure what to do with the child, so he decides probably the safest thing for the child is to leave her at the Lake City Police Department.
>
> It was while he was there that officers discovered that something had taken place.
>
> . . . .
>
> The two officers who were then on the scene went into the residence where they discovered these three bodies on the floor. They did a protective sweep of the house to make certain there were no other victims or perpetrators in the house.
>
> Mr. Strattan was ultimately – custody was transferred to the sheriff's office, where an interview was taken by two officers . . . on a videotaped statement. Mr. Strattan laid everything out that happened during the period of time that this – the killings went down.
>
> . . . .
>
> Ms. Cervantez was with child. The autopsy revealed that. . . . Doctor Randell Alexander from Jacksonville went back and reviewed the autopsy information and has determined the child would have been viable with reasonable medical care available to it.
>
> . . .
>
> I will make the Court aware that one of the rounds actually went through the child.

Resp. Ex. B at 74-77. Contrary to Strattan's current claim, the factual basis, read into the record and which Strattan agreed to under oath, demonstrates conduct that is both premediated and deliberate. Thus, Strattan has failed to show that his "state of mind" or lack of "aforethought" defense would likely succeed at trial.

11

Further, Strattan's own statements at the plea hearing confirm the intent behind his actions and the voluntary nature of his decision to plea. See Resp. Ex. B at 96. Indeed, Strattan testified in pertinent part:

> There's no way to measure my regret and sorrow. Words will never be enough to explain how sorry I am and my apology will never be enough. I'm always going to be filled with anguish and remorse and not a single moment goes by that I'm not haunted by the pain and loss and what I've done.
>
> The person that I am is not the person I was that night. I wasn't on drugs and I wasn't drunk. I was overcome by evil, an[ ] evil so strong that I couldn't control it and I was weak.
>
> I'm taking this plea so you won't have to go through any more pain of a long trial and appeals. I'm taking responsibility. It is done. There will be no appeals.

Resp. Ex. B at 96. In exchange for Strattan's pleas of guilty, the state agreed to not seek the death penalty for Strattan's crimes. Resp. Ex. B at 66. Accordingly, Strattan cannot demonstrate that but for counsel's alleged error, he would not have pled guilty and would have instead proceeded to trial. Strattan cannot show prejudice under Strickland, and this claim is denied.

Therefore, it is **ORDERED AND ADJUDGED**:

1. The Amended Petition (Doc. 4) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is

not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.³

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of January 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7
C: Alan Strattan, #I12015
    Counsel of record

---

³ The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.